CONTINENTAL CASUALTY
COMPANY

v.

**James E. SMITH, Jr., Smith Martin, P.L.C., and Warren L. Reuther, Jr., et al.**

Nos. Civ.A. 02–0282, Civ.A. 01–3625.

United States District Court,
E.D. Louisiana.

Jan. 2, 2003.

Robert Allan Vosbein, William J. Kelly, III, Adams & Reese, New Orleans, LA,

Richard A. Simpson, Ross, Dixon & Bell, Washington, DC, for Plaintiff.

W. Patrick Klotz, Jr., Klotz & Early, Randall A. Smith, Andrew Lewis Kramer, Smith & Fawer, LLP, New Orleans, LA, for Defendants.

## ORDER AND REASONS

VANCE, District Judge.

Before the Court is the motion of plaintiff, Continental Casualty Company, for summary judgment. Continental claims that it owes no duty to defend or indemnify the defendants in two underlying lawsuits filed against them. For the following reasons, the Court grants plaintiff's motion.

### I. Background

This matter arises out of a business dispute between Warren Reuther and his nephew, James E. Smith, Jr. Reuther and Smith Jr.'s father, James E. Smith, Sr., have a long-standing business relationship that resulted in the creation of a number of corporations primarily engaged in the tourist industry in the New Orleans area. Reuther and Smith Sr. each obtained a 50% stake in the corporations, which were formed by defendant Smith Jr. in his capacity as an attorney. Smith Jr. and his law firm, defendant Smith Martin, P.L.C., acted as counsel for the corporations and also served as counsel to Reuther individually. Until 1996, Reuther was primarily responsible for the day-to-day operations of the corporations. In 1996, Reuther and Smith Sr. agreed to begin turning over some management responsibilities to Smith Sr.'s children, including Smith Jr.[1] Specifically, they agreed to create a new

---

1. Around 1996, Reuther transferred a 0.5% interest in the corporations to each of his sons, Warren L. Reuther, III and Robert G. Reuther. Smith Sr. transferred roughly half of his 50% stake in the corporations to a number of family members, but he did not transfer an ownership interest to Smith Jr.

position called Chief Executive Officer ("CEO"), which Reuther would assume in exchange for relinquishing the title of "President" in favor of Smith Sr.'s children. Smith Jr. ultimately assumed the title of President in 1999. On October 30, 2001, Smith Jr., as President of the corporations, told Reuther that if he did not resign he would be terminated. Smith Jr. changed the office locks, terminated Reuther's e-mail and cellular service, and cancelled Reuther's health plan. Reuther, as CEO of the corporations, had no means of recourse because it is alleged that the by-laws were never amended to reflect the title of CEO in accordance with the agreement between Reuther and Smith Sr.

On December 3, 2001, Reuther filed a lawsuit in federal court on behalf of himself and other shareholders of the corporations alleging that Smith Jr. unlawfully wrested control of the corporations from Reuther.[2] Reuther alleges that Smith Jr., as lead counsel for the corporations, should have amended the by-laws to reflect the role of CEO, but he never did and failed to advise Reuther of his failure. Reuther alleges that Smith Jr. and his firm, as counsel for the corporations and for Reuther personally, operated under an unwaivable conflict of interest, falsified minutes of shareholder and board meetings, and failed to disclose relevant facts affecting Reuther's rights and interests in the companies. Reuther further alleges that

Smith Jr. violated federal securities laws by representing to investors that Reuther was CEO when, in fact, Smith Jr. knew that no such position existed. Further, Reuther alleges that Smith unilaterally and unlawfully modified the flow of gaming proceeds for his personal financial benefit.[3] In all, the complaint filed in federal court (the "Reuther Action") alleges RICO violations, federal securities law violations, ERISA violations, legal malpractice, fraud, unfair trade practices, breach of fiduciary duties, malfeasance and/or mismanagement, abuse of rights, conversion of assets, whistleblowing, and intentional infliction of emotional distress. (*See* 01–CV–3625.) Reuther also filed a petition in state court, with similar allegations, seeking injunctive relief (the "Reuther Petition").

Plaintiff Continental provides malpractice insurance to defendants under the Lawyers Professional Liability Policy No. 190923119 (the "Policy"). Plaintiff contends that it owes no duty to defend or indemnify defendants in the Reuther Action and in the Reuther Petition. Defendants concede that claims brought by reason of acts or omissions in the performance of legal services provided to the corporations are excluded from coverage under the policy. Defendants nevertheless contend that Reuther's claims arising from defendants' representation of Reuther personally are *not* excluded. Thus,

2. The "corporations" are Airport Holdings, Inc., Airport Shuttle, Inc., Airport Shuttle Colorado, Inc., Chicory Building, Inc., Delta Transit, Inc., Destination Management, Inc., Hospitality Enterprises, Inc., Lodging, Inc., New Orleans International Cruise Ship Terminal, Inc., New Orleans Paddlewheels, Inc., New Orleans Tours, Inc., On the Town, Inc., RSC Management, Inc., and Visitor Marketing, Inc.

3. Smith Jr.'s compensation as President of the corporations is 20% of the net profits from the corporations except for those profits

generated by Shreveport Paddlewheels and New Orleans Paddlewheels. Shreveport Paddlewheels is wholly owned by New Orleans Paddlewheels. Reuther alleges that the shareholders of New Orleans Paddlewheels voted to transfer the ownership interest of Shreveport Paddlewheels from New Orleans Paddlewheels to the individual shareholders of New Orleans Paddlewheels. Reuther further alleges that Smith Jr. unlawfully blocked this transfer and, instead, diverted gaming profits from New Orleans Paddlewheels to other corporations from which Smith receives 20% of the net profits.

the sole disputed issue before the Court concerns whether plaintiff has a duty to defend because the underlying lawsuits include allegations that Smith Jr. and Smith Martin represented Reuther personally.

## II. Discussion

### A. Jurisdiction

■ Defendants assert that this Court lacks jurisdiction to make a determination as to whether plaintiff owes defendants a duty to defend the Reuther Petition pending in state court. The Declaratory Judgment Act allows a federal court to issue declaratory relief in cases of actual controversy within its jurisdiction. 28 U.S.C. § 2201(a). Because Continental is an Illinois corporation, defendants are Louisiana citizens, and the amount in controversy exceeds $75,000, the Court possesses diversity jurisdiction over this lawsuit. 28 U.S.C. § 1332. Furthermore, the Fifth Circuit has squarely held that an "actual controversy may exist when an insurance carrier seeks a declaratory judgment that it has a duty neither to defend nor indemnify its insured in a state court action that has not yet proceeded to judgment." *American States Insurance Company v. Bailey*, 133 F.3d 363, 368 (5th Cir.1998); *see also Western Heritage Insurance Co., v. River Entertainment*, 998 F.2d 311 (5th Cir.1993). Accordingly, the Court concludes that it has jurisdiction to determine this controversy.

### B. Legal Standard

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. (FED. R. CIV. P. 56(c)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986). The court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the burden of establishing that there are no genuine issues of material fact. *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1445 (5th Cir. 1993). A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *See Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 2001 WL 1650961 (5th Cir. 2001) (citations omitted).

If the dispositive issue is one for which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2552; *Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

### C. Interpreting the Insurance Policy

■ A district court sitting in diversity applies the law of the forum state. *Guaranty Nat. Ins. Co. v. Azrock Industries, Inc.*, 211 F.3d 239, 243 (5th Cir.2000). Louisiana law provides that an issue of conventional obligations such as the insurance policy in question "is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." LA. CIV.CODE ANN. art. 3537 (West 2002). Among the factors

courts consider are (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance; (2) the nature, type, and purpose of the contract; and (3) the policies of promoting multistate commercial intercourse. *Id.* Here, the parties do not dispute that the insurance policy in question is governed by Louisiana law.

◼ Under Louisiana law, courts use the general rules of contract interpretation to construe insurance policies. *See Trinity Industries, Inc. v. Insurance Co. of North America,* 916 F.2d 267, 269 (5th Cir.1990) (citing *Breland v. Schilling,* 550 So.2d 609, 610 (La.1989)). The parties' intent, as reflected by the words of the policy, determines the extent of coverage. *Ledbetter v. Concord General Corp.,* 665 So.2d 1166, 1168 (La.1996). Unless the words have acquired a technical meaning, their intent is to be determined by their general, plain and popular meaning. LA. CIV.CODE ANN. art. 2047 (West 2002). Courts should consider the policy as a whole and interpret the policy to fulfill the reasonable expectations of the parties in light of the customs and usages of the industry. *See Trinity Industries,* 916 F.2d at 269. But if the wording of the policy is ambiguous, then it should be construed to effect, not deny, coverage. *See Yount v. Maisano,* 627 So.2d 148, 151 (La. 1993). In other words, ambiguous provisions must be strictly construed against the insurer, though not to such a degree that the language of the policy is perverted. *Reynolds v. Select Properties, Ltd.,* 634 So.2d 1180, 1183 (La.1994); *Commercial Union Insurance Company v. Advance Coating Co.,* 351 So.2d 1183, 1185 (La.1977); *see also FDIC v. Barham,* 995 F.2d 600, 603 (5th Cir.1993).

◼ In determining an insurer's duty to defend suits brought against an insured, the Court looks to the four corners of the insurance contract and the four corners of the petition in the underlying litigation. *Vaughn v. Franklin,* 785 So.2d 79, 83–84 (La.Ct.App.2001). This is the so-called "eight-corners rule." The insurer must defend the insured if "there are any facts in the complaint which, if taken as true, support a claim for which coverage is not unambiguously excluded." *Complaint of Stone Petroleum Corporation,* 961 F.2d 90, 91 (5th Cir.1992). In making this determination, the complaint is "liberally interpreted." *Id.* It follows that Continental must defend the underlying lawsuits if Reuther's allegations in the Reuther Action and Reuther Petition support a cause of action against defendants that is not unambiguously excluded from coverage.

### D. The Reuther Action

◼ Plaintiff asserts that three provisions of the Policy operate to exclude coverage of and a duty to defend the Reuther Action. First, a "Specific Person Or Entity Exclusion Endorsement" provides:

This Policy does not apply to any claim made against an Insured by reason of acts or omissions in the performance of legal services by the Insured on behalf of the person or entity specified below, or any entity that is operated, managed or owned by such entity or an affiliate, subsidiary or parent thereof:

New Orleans Paddlewheel, Inc.

New Orleans Tours, Inc.

Airport Shuttle, Inc.

Destination Management, Inc.

New Orleans International Cruise Terminal, Inc.

Delta Transit, Inc.

Visitor Marketing, Inc.

On The Town, Inc.

Hospitality Enterprises, Inc.

Broadway Properties, LLC

FX Properties, LLC

Ember Properties, LLC

Alpine Properties, LLC

Smith, Martin & Boyette

(Pl.'s Mot. for Summ. J., Ex. A, Policy, the "Specific Entity Exclusion.") Some of the corporations involved in the Reuther Action are named in this list; the remainder either share common ownership and management with corporations on this list or are affiliates or subsidiaries of these corporations.[4]

The second provision plaintiff relies on is Exclusion F:

[This Policy does not apply] to any claim based on or arising out of an Insured's capacity as:

1. a former, *existing or prospective officer*, director shareholder, partner or manager of a business enterprise or charitable organization. . . .

(*Id.* at Section IV.F (emphasis added).)

The third relevant provision of the Policy is Exclusion H:

[This Policy does not apply] to any claim based on or arising out of legal services performed for any existing or prospective partnership, organization, corporation, company or other business enterprise (including ownership, maintenance or care of any property in connection therewith), not named in the Declarations, if at the time of the act or omission giving rise to such claim:

1. any Insured controlled, operated or managed or intended to control or manage such enterprise; or

2. any Insured was:

   a. a partner or employee of such enterprise, or

   b. more than a 10% shareholder or a sole proprietor of such enterprise, or

3. Insureds cumulatively were more than a 10% shareholder of such enterprise. . . .

(*Id.* at Section IV.H.) The Court finds these provisions to be clear and unambiguous. Furthermore, the Court notes that when an insurance policy excludes coverage for claims "arising out of" certain conduct, "the exclusion is given a broad, general, and comprehensive interpretation." *Scottsdale Insurance Company v. Texas Security Concepts and Investigation*, 173 F.3d 941, 943 (5th Cir.1999) (applying Texas law); *McDaniels v. Great Atlantic & Pacific Tea Company*, 602 F.2d 78, 82 (5th Cir.1979) (applying Louisiana law). The term "arising out of" means "growing out of" or "flowing from" or "incident to" or "having a connection with." *McDaniels*, 602 F.2d at 82 (quoting *Red Ball Motor Freight, Inc. v. Employers Mutual Liability Insurance Co.*, 189 F.2d 374, 378 (5th Cir.1951)).

In the Reuther Action, Reuther asserts derivative claims, on behalf of himself and other shareholders of the corporations, for Smith Jr.'s and Smith Martin's wrongful activities. Reuther also seeks to recover "on his own behalf" for legal malpractice committed because defendants represented him personally. In light of the three business enterprise exclusions in the Policy, defendants "readily agree that any claims made by Reuther as a result of legal services rendered by Smith or Smith Martin on behalf of the [corporations] is not covered under this policy of insurance." (Def.'s Memo. in Opp. to Pl.'s Mot. for Summ. J., at 3.) Defendants also concede that claims made against Smith in his capacity as an officer or shareholder of the corporations are excluded from coverage. (*Id.*) The remaining issue is whether cover-

---

4. The five corporations involved in the Reuther Action that are not named in the Endorsement are Airport Holdings, Inc.; Airport Shuttle Colorado, Inc.; Chicory Building, Inc.; Lodging, Inc.; and RSC Management, Inc.

age and a duty to defend exists as to Reuther's allegations that he was personally represented by Smith Jr. and Smith Martin.

The Court finds that all of Reuther's allegations arise out of Smith Jr.'s activities as president of the corporations, in anticipation of his role as president, or from legal services performed for companies that an insured managed, controlled or intended to control. In 1996, Reuther and Smith Sr. decided to turn over some day-to-day control of the corporations to Smith Sr.'s children. Smith Jr. ultimately assumed the title of president in 1999. Smith Jr.'s alleged failure to amend the bylaws of the corporations to reflect Reuther's position as CEO served to strengthen his own hand as president. Similarly, Smith Jr.'s alleged diversion of profits from New Orleans Paddlewheels to other corporations from which Smith Jr.'s compensation is derived "arises out of" Smith Jr.'s capacity as president. The conflict of interest complained of arose out of the representation by Smith Jr. and his firm of companies which Smith managed, controlled or was employed by. The alleged falsification of corporate records arose out of Smith Jr.'s control of the companies or his and his firms' representation of companies he managed or intended to control. Defendants have failed to identify a single allegation in the Complaint (or in the RICO case statement) that states a cognizable claim independent and separable from an insured's capacity as an existing or prospective officer of the corporations or from legal representation provided to companies which an insured controlled or intended to control.[5]

In *Mt. Airy Insurance Company v. Greenbaum*, 127 F.3d 15 (1st Cir.1997), the plaintiff in an underlying action had entered into a real estate partnership with a number of attorneys. The plaintiff was a passive investor, entrusting the attorneys with management and oversight of the partnership's business affairs. In the ensuing lawsuit, the plaintiff alleged that the attorney defendants misappropriated funds held by the partnership. The plaintiff also alleged that the attorney defendants, as his personal attorneys, committed malpractice. The attorneys' malpractice insurance policy excluded coverage for claims "arising out of" the conduct of a business enterprise operated or managed by an insured. The First Circuit held that the policy excluded coverage of the claims in the underlying action, including the malpractice claims, because the policy exclusion extended "to *any* claim arising out of or in connection with the conduct of a business entity in which an insured has an interest." *Greenbaum*, 127 F.3d at 20; *see also Coregis Insurance Company v. Larocca*, 80 F.Supp.2d 452 (E.D.Pa.1999) and *The Home Insurance Company of Indiana v. Walsh*, 854 F.Supp. 458 (S.D.Tex.1994).

Similarly, the exclusion at issue here—Exclusion F—excludes any claim arising out of the insured's activities as an existing or prospective officer of a business entity. Exclusion H excludes any claim arising out of legal services performed for entities that an insured operated, managed or intended to control. Together, Exclusion F and Exclusion H operate to exclude claims pertaining to the legal services that Smith Jr. and Smith Martin provided to Reuther individually, as each of these allegations arose out of Smith Jr.'s activities as president of the corporations (or in anticipation of that role), or out of legal services that Smith Jr. or his firm performed for companies that Smith Jr. controlled or intended

---

**5.** Because the Reuther Complaint alleges RICO violations, Reuther was ordered by the Court the provide a RICO Case Statement (Rec.Doc. No. 3).

to control. Reuther's vague assertion that defendants did not disclose relevant information affecting his rights in the companies is another facet of the conflict of interest claim. It arises out of Smith Jr.'s role in the companies or the legal services performed for companies that Smith Jr. controlled or intended to control. Otherwise, neither Smith Jr. nor Smith Martin would have had access to the information that Reuther alleges should have been disclosed. It follows that Continental has no duty to defend or indemnify defendants in the Reuther Action.

### E. The Reuther Petition

Continental also seeks a declaration that defendants are not entitled to a defense of the Reuther Petition pending in state court. As the allegations made in the state court petition mirror those involved in the federal action, the Court finds that defendants are not entitled to a defense from Continental. This is because each of the allegations is excluded by either Exclusion F or Exclusion H. Moreover, the policy obligates Continental to defend an insured from a "claim," which is defined as "a demand received by the Insured for money or services arising out of an act or omission, including personal injury, in the rendering of or failure to render legal services." (Policy at III.B.) In the state court action, Reuther seeks only injunctive relief that restrains Smith Jr. from denying Reuther the rights and privileges that he has as CEO, that prevents the defendants from removing or destroying Reuther's files and records, and that stops the defendants' unethical conduct in representing Reuther and the corporations. The action is not, therefore, a demand "for money or services." It is not a "claim" within the meaning of the policy. The fact that insureds may incur expenses in complying with an injunction does not render injunctive relief a claim for damages within the meaning of the policy. *Aetna Casualty*

*and Surety Company v. Hanna,* 224 F.2d 499, 503 (5th Cir.1955); *Certain Underwriters at Lloyd's London v. 2–Up, Inc.,* 2000 WL 245862, \*2 (E.D.La.2000). Accordingly, Continental owes no duty to defend or indemnify defendants in the Reuther Petition.

### III. Conclusion

For the foregoing reasons, the Court grants plaintiff's motion for summary judgment.